IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERRY RASMUSSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | )   No. 10 C 2344 |
| v. | ) |
| | )   Magistrate Judge Nan R. Nolan |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sherry Rasmussen filed this action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 416, 423(d), 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons stated below, this case is remanded for further proceedings consistent with this opinion.

## I. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the Act, a claimant must establish that he or

she is disabled within the meaning of the Act.[1] *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001); *Keener v. Astrue*, 2008 WL 687132, at *1 (S.D. Ill. 2008). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

See 20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The SSI regulations are virtually identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq*.

"The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on January 24, 2006, alleging that she became disabled on November 1, 2003, due to irritable bowel syndrome ("IBS"), colitis, chronic dizziness and numbness, neuromas[2] in both feet, bulging spinal discs, and abdominal pain. (R. at 12, 14, 85–86, 113.) The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 12, 56–63, 75.)

On May 13, 2008, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge ("ALJ"). (R. at 12, 22–55.) The ALJ also heard testimony from Sheldon J. Slodki, M.D., a medical expert ("ME") and Leo O. Knutson, a vocational expert ("VE"). (*Id.* at 12, 44–55, 103, 105.)

The ALJ denied Plaintiff's request for benefits on September 30, 2008. (R. at 12–21.) Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of November 1, 2003. (*Id.* at 14.) At step two, the ALJ found that Plaintiff has the following severe impairments: adjustment reaction disorder, anxiety disorder, IBS, foot neuroma, gastroesophageal reflux disease ("GERD"), colitis, and neck pain. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments do not

---

[2] A neuroma or "Morton's neuroma" is a painful condition affecting the ball of the foot, usually between the third and fourth toes. Individuals with a neuroma have a thickening of tissue around one of the nerves leading to the toes, which can cause pain or numbness in the ball of the foot. www.mayoclinic.com/health/mortons-neuroma/DS00468

meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 15.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff has the RFC to perform sedentary work, except that she must have access to a bathroom and be allowed to elevate her feet to foot stool height; from a mental health perspective, she is limited to performing unskilled, simple, routine and repetitive tasks. (R. at 17.) Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff could not perform any past relevant work. (*Id.* at 19–20.) At step five, based on Plaintiff's RFC, her vocational factors and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including work as an order clerk, surveillance system monitor, cashier and product inspector—checker/weigher. (*Id.* at 20.) Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 21.)

The Appeals Council denied Plaintiff's request for review on January 5, 2010. (R. at 1–7.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of

---

[3] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

# IV. DISCUSSION

Plaintiff raises several arguments in support of her request for reversal and remand: (1) the ALJ improperly evaluated the opinion of Plaintiff's treating physician; (2) the ALJ improperly evaluated Plaintiff's credibility; and (3) the ALJ failed to properly account for the effects of IBS and mental impairments in determining Plaintiff's RFC. The Court addresses each argument in turn.

## A. The ALJ's Evaluation of the Opinion of Plaintiff's Treating Physician

Plaintiff contends that the ALJ did not properly evaluate the opinion of her treating gastroenterologist, Matthew L. Horowitz, M.D. (Pl.'s Mot. 12–15.) She argues that the ALJ did not explain the weight given to Dr. Horowitz's opinion or explain why Dr. Horowitz's opinion was not entitled to controlling weight. (*Id.* 13–15.) Plaintiff also contends that, in determining that Dr. Horowitz's opinion was not entitled to controlling weight, the ALJ failed to discuss the factors listed in 20 C.F.R. § 404.1527(d), as required by Social Security Ruling ("SSR")[4] 96-2p. (*Id.* 13–14.)

### 1. Applicable Law

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). An ALJ should bear in mind that a treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). An "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Id.*

It is clear that an ALJ may not make an independent medical finding, substituting his own opinion of the medical evidence for that of the claimant's treating physician. *Rohan v. Chater*, 98 F.3d 966, 970–71 (7th Cir. 1996); *see Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) ("Obviously if [the treating physician's medical opinion] is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it."). If conflicting medical evidence is present, however, it is the ALJ's responsibility to resolve the conflict. *Books*, 91 F.3d at 979 (ALJ must decide which doctor to believe). An ALJ may reject the opinion of a treating physician in favor of the opinion of a nontreating physician in some cases, particularly where the nontreat-

ing physician has special expertise that pertains to the case and where the issue is one of interpretation of records or results rather than one of judgment based on observations over a period of time. *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992) ("[I]t is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or . . . the consulting physician, who may bring expertise and knowledge of similar cases—subject only to the requirement that the ALJ's decision be supported by substantial evidence."); *Hofslien*, 439 F.3d at 377 ("So the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."). Thus, the testimony of a medical advisor may be given substantial weight, even if the advisor did not personally examine the claimant. *DeFrancesco v. Bowen*, 867 F.2d 1040 (7th Cir. 1989). Nevertheless, "if an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527.

### 2. Medical Evidence

Plaintiff treated with Dr. Horowitz in 2002 and then bimonthly from 2006 through 2007. (R. at 467–80, 585, 604–28.) On September 25, 2002, Plaintiff sought treatment from Dr. Horowitz after she had been suffering for nearly two months from abdominal pain and multiple episodes of diarrhea. (*Id.* at 622.) Dr. Horowitz performed a full examination and administered a colonoscopy but could not find any

abnormalities in Plaintiff's digestive system. (*Id.* at 623–28.) He opined that Plaintiff's symptoms were most consistent with IBS or lymphocytic colitis.[5] (*Id.* at 467, 623.) Over the next several years, her symptoms "waxed and waned." (*Id.* at 467.)

In July 2006, Plaintiff reported that her symptoms had become chronic. (R. at 467, 610.) She complained of frequent episodes of nausea, vomiting, and diarrhea occurring four to five hours after eating. (*Id.* at 467.) Dr. Horowitz prescribed Reglan[6] and scheduled her for a gastroscopy. (*Id.*) On July 21, 2006, Dr. Horowitz performed an esophagogastroduodenoscopy ("EGD"),[7] diagnosed hiatal hernia,[8] and opined that Plaintiff's symptoms were secondary to functional dyspepsia. (*Id.* at 479–80.) On August 29, 2006, Plaintiff reported intermittent episodes of heartburn, occasional oropharyngeal dysphagia,[9] and diarrhea. (*Id.* at 469.) Dr. Horowitz opined that while Plaintiff's symptoms appear to be mainly functional, they could be caused by microscopic colitis. (*Id.*) The results of Plaintiff's colonoscopy performed on September 27, 2006 were normal, and she was diagnosed with chronic diarrhea.

---

[5] Lymphocytic colitis is "A type of inflammatory disease of the large intestine (colon). . . . Since the colon (large intestine) appears normal under colonoscopy, this condition has been referred to as 'microscopic colitis' because the characteristic abnormalities are only apparent when biopsies of the colon are examined microscopically." www.medterms.com

[6] Reglan (metoclopramide) "is used short-term to treat heartburn caused by gastroesophageal reflux in people who have used other medications without relief of symptoms." www.drugs.com

[7] An EGD or upper endoscopy is "a procedure . . . to examine the esophagus (the swallowing tube), stomach, and duodenum (the first portion of small bowel)." www.medterms.com

[8] A hiatal hernia is "a condition in which the upper part of the stomach bulges through an opening in the diaphragm." www.nlm.nih.gov/medlineplus

[9] Oropharyngeal dysphagia is "difficulty in either the oral or pharyngeal phases of swallowing, such as in chewing, initiating the swallow, or propelling the bolus through the pharynx to the esophagus." http://medical-dictionary.thefreedictionary.com

(*Id.* at 476, 478.) In late 2006, Plaintiff complained of severe diarrhea and chronic vomiting. (*Id.* at 608, 615.) On December 12, 2006, Dr. Horowitz confirmed his earlier diagnosis that Plaintiff suffers from IBS and GERD. (*Id.* at 609.)

On March 23, 2007, Dr. Horowitz completed a residual functional capacity questionnaire. (R. at 585–89.) He reported that Plaintiff suffers from chronic diarrhea, abdominal pain and cramping, extreme nausea weight loss, vomiting and severe pain, and diagnosed gastroesophageal reflux disease, hiatal hernia, IBS, and colitis. (*Id.* at 585–86.) Dr. Horowitz concluded that Plaintiff is not a malingerer; emotional factors contribute to the severity of her symptoms and functional limitations; physical and emotional impairments are reasonably consistent with her symptoms and functional limitations; and her pain and symptoms cause constant interference with attention and concentration. (*Id.* at 586.) He concluded that Plaintiff's impairments are likely to produce "good days" and "bad days;" that  during an 8-hour workday, Plaintiff would need to visit the restroom as often as every 15 minutes and would be away from her work station for up to 20 minutes each time; and that she would be absent from work more than four days per month. (*Id.* at 588–89.) Dr. Horowitz opined that Plaintiff is incapable of tolerating even low stress jobs. (*Id.* at 587.)

### 3. *Analysis*

In her decision, the ALJ "carefully considered" Dr. Horowitz's opinion but did not assign it the controlling weight generally given to a treating physician's report. (R. at 19.) Specifically, the ALJ found that Dr. Horowitz's opinion was "conclusory in nature and is not supported by the objective medical evidence of record." (*Id.*) She

concluded that "there are very little records to support [Plaintiff's] allegations of extreme symptoms." (*Id.*) Instead, the ALJ accorded "substantial weight" to the state agency physicians, finding that their opinions were "not inconsistent with the medical evidence as a whole." (*Id.*)

Under the circumstances, none of the reasons provided by the ALJ for rejecting Dr. Horowitz's opinion are legally sufficient or supported by substantial evidence. First, the ALJ erred in relying on the opinions of the nontreating, nonexamining state agency physicians, over the opinion of Plaintiff's treating physician. The reports by the state agency physicians were issued prior to Dr. Horowitz completing his questionnaire and did not even consider Plaintiff's symptoms of IBS, GERD or colitis. (*Compare* R. at 446–47, *and id.* at 565–67, *with id.* at 585–89.) In any event, "a contradictory opinion of a non-examining physician does not, by itself, suffice" to provide the evidence necessary to reject a treating physician's opinion. *See Gudgel*, 345 F.3d at 470; *Oakes v. Astrue*, 258 F. App'x 38, 44 (7th Cir. 2007); *Holmes v. Astrue*, 2008 WL 5111064, at *7 (W.D. Wis. 2008) ("A contradictory opinion of a non-examining physician is not sufficient by itself to provide the evidence necessary to reject a treating physician's opinion.").

Second, the medical evidence supports Dr. Horowitz's report. Dr. Horowitz consistently referenced Plaintiff's IBS, GERD and colitis in his treatment notes. (*See, e.g.*, R. at 222 (upon discharge from hospital in March 2006, Plaintiff diagnosed with IBS), 467 (complaining of frequent episodes of nausea, vomiting and diarrhea), 469 (reporting chronic diarrhea and occasional oropharyngeal dysphagia), 607 (com-

plaining of chronic nausea and vomiting), 608 (reporting severe diarrhea and vomiting), 615 (reporting severe diarrhea), 660; *see also id.* at 439 (consultative examiner noting in July 2006 that Plaintiff diagnosed with IBS after complaining of abdominal pain and diarrhea).) The ALJ cannot discuss only those portions of the treating physician's reports that support her opinion. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence. It is not enough for the ALJ to address mere portions of a doctor's report.") (citations omitted); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion."). Further, that Plaintiff's IBS, GERD and colitis has "waxed and waned" over time (R. at 18) does not undermine Dr. Horowitz's opinion, *see Bauer*, 532 F.3d at 609 ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."); *Strocchia v. Astrue*, 2009 WL 2992549, at *17 (N.D. Ill. 2009) ("Dr. Dwivedi's notes show that Plaintiff's symptoms, mood and functioning varied between visits, and there were days when Dr. Dwivedi's observations of Plaintiff corresponded with the observations of the other medical sources. The differences in reported frequency, intensity, and limiting effects of these symptoms do

not automatically indicate inconsistency, but instead should be expected in the course of ongoing treatment.") (citing *Bauer*, 532 F.3d at 609).

Third, the ALJ did not explain which parts of Dr. Horowitz's opinion she was adopting and which parts she was rejecting. While the ALJ is not required to address every piece of evidence, she must provide a "logical bridge" between the evidence and her conclusion. *See Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) ("The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his conclusions."). "An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870; *see Rohan*, 98 F.3d at 968 ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Instead, the ALJ must provide specific, legitimate reasons for rejecting the treating physician's findings. *Clifford*, 227 F.3d at 870; *accord Rojas v. Astrue*, 2010 WL 4876698, at *8 (N.D. Ill. Nov. 19, 2010); *see* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons . . . for the weight we give your treating source's opinion."); SSR 96-2p, at *5 ("decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). In effect, the ALJ erred when she substituted her judgment for that of Dr. Horowitz and left unexplained why she was

ignoring some but not all of Dr. Horowitz's observations and findings. *See Clifford*, 227 F.3d at 870.

Finally, the ALJ did not provide the specific weight she was affording Dr. Horowitz's opinion. Generally, the Commissioner gives more weight to treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Unless the ALJ gives the treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss*, 555 F.3d at 561.

Here, Plaintiff treated with Dr. Horowitz in 2002 and then bimonthly from 2006 through 2007. (R. at 467–80, 585, 604–28.) Over the course of the treating relationship, Dr. Horowitz, a specialist in gastroenterology, performed examinations, administered a colonoscopy and an EGD, diagnosed IBS and GERD, and prescribed Reglan. (*Id.* at 467–80, 604–28.) Nevertheless, in considering Dr. Horowitz's opinion, the ALJ did not discuss these factors or include specific reasons for the weight given to Dr. Horowitz's opinion. Instead, the ALJ merely stated that "Dr. Horowitz's observations and findings are not ignored and have been carefully considered in

providing insight as to functional ability and how they affect [Plaintiff's] ability to work." (*Id.* at 19.) That was error.

On remand, the ALJ's decision "must contain specific reasons for the weight given to [Dr. Horowitz's] medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to [Dr. Horowitz's] medical opinion and the reasons for that weight." SSR 96-2p, at *5.

## B. The ALJ's Credibility Finding

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because she failed to make a proper credibility determination as required by SSR 96-7p. (Pl.'s Mot. 9–12.) She argues that although the ALJ found that the objective evidence supported *some* of Plaintiff's testimony regarding her symptoms and limitations, the ALJ failed to specify which portions of Plaintiff's testimony the evidence supported, and which portions it did not. (*Id.* 11–12.)

### 1. *Applicable Law*

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d

804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). If a claimant's symptoms are not supported by medical evidence, the ALJ may not ignore available evidence. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p.

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss*, 555 F.3d at 561. The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

### 2. *Plaintiff's Testimony*

Plaintiff testified that she is unable to work because of IBS, neuromas in her feet, and anxiety. (R. at 26–44.) In 2002, she was diagnosed with IBS after experiencing an episode of vomiting, severe diarrhea, and abdominal pain, which resulted

in a six-day hospital stay. (*Id.* at 27.) She cannot go to a store without having to go to the restroom every 15 to 20 minutes due to her diarrhea. (*Id.* at 36.) She testified that 10 to 12 days a month she has to go to the restroom every 15 to 20 minutes. (*Id.* at 37.) She has frequent accidents where she cannot make it to the restroom on time. (*Id.* at 36–38.)

As for the neuromas in her feet, Plaintiff testified that she cannot stand for longer than 10 to 15 minutes at a time and must then elevate her feet for 20 minutes. (R. at 40.) She is capable of walking for only 10 to 15 minutes at a time. (*Id.* at 41.) She described the pain in her feet as "extreme," like "sharp knife pain." (*Id.*) Plaintiff cannot drive for "real long distances." (*Id.* at 36.) She is unable to do cooking, cleaning, laundry or yard work. (*Id.* at 34–35, 41– 42.)

With regard to her mental impairments, Plaintiff testified that she has problems with anxiety. (R. at 30–31.) She takes two medications and sees a counselor every other week. (*Id.* at 43–44.)

### 3. Analysis

In her decision, the ALJ determined that Plaintiff's claims were not credible because the objective medical evidence does not fully support her allegations. (R. at 18.) The ALJ acknowledged that Plaintiff's "pain symptoms that appear throughout the record are legitimate" and "the objective medical evidence provides some support to [Plaintiff's] allegations." (*Id.* at 17, 18.) Nevertheless, the ALJ found that the medical evidence "does not support the elevated level of impairment alleged." (*Id.* at 18.)

Under the circumstances, none of the reasons provided by the ALJ for rejecting Plaintiff's credibility are legally sufficient or supported by substantial evidence. First, the ALJ's statement that "the objective medical evidence of record does not fully support [Plaintiff's] allegations" (R. at 18) is not a legitimate reason for rejecting Plaintiffs credibility. "The ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562; *see also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (rejecting statement that "there is little objective evidence to support the claimant's allegations of extreme pain" as legally insufficient). Instead, "because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence." SSR 96-7p, at *1.

Second, while the ALJ acknowledged that "the objective evidence provides some support to [Plaintiff's] allegations" (R. at 18), she does not explain which of Plaintiff's allegations were credible, which were incredible, or provide reasoning in support of her findings, *see Groneman v. Barnhart*, 2007 WL 781750, at *11 (N.D. Ill. March 9, 2007) ("The ALJ may have provided a *reason* for rejecting Mr. Groneman's allegations—because he did not seek treatment and follow through with medica-

tion—but he did not provide *reasoning*."). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2.

Third, the ALJ's conclusions are not supported by substantial evidence. The ALJ discounts Plaintiff's allegations of frequent explosive episodes of diarrhea because in March 2006, Plaintiff denied any gastrointestinal complaints when she presented to Silver Cross Hospital with complaints of dizziness, and in July 2006, Plaintiff reported to Dr. Horowitz that her IBS symptoms had "waxed and waned." (R. at 18.) However, while Plaintiff reported that her symptoms had waxed and waned since she first saw Dr. Horowitz in 2002, by July 2006—more than three months after her hospital visit—her symptoms had become chronic. (*Id.* at 467, 610.) Thereafter, she consistently reported chronic bouts of nausea, vomiting, diarrhea, heartburn, oropharyngeal dysphagia, and abdominal pain. (*Id.* at 467–80, 585–89, 604–28.). The ALJ cannot discuss only those portions of the record that support her opinion. *See Myles*, 582 F.3d at 678 ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence. It is not enough for the ALJ to address mere portions of a doctor's report.") (citations omitted); *Murphy*, 496 F.3d at 634 ("An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion.").

The ALJ also failed to account for the cumulative effects of the Plaintiff's mental and physical limitations. Dr. Horowitz found that "emotional factors contribute to the severity of [Plaintiff's] symptoms and functional limitations" and that Plaintiff's physical and emotional impairments are "*reasonably consistent*" with her symptoms and functional limitations.[10] (*Id.* at 586.) Nevertheless, the ALJ discounted Plaintiff's symptoms because they "appear to be mainly functional." (R. at 18.) But the ALJ herself found that Plaintiff has *both* physical *and* mental impairments. (*Id.* at 14) (finding that Plaintiff's adjustment reaction disorder, anxiety disorder, IBS, foot neuroma, GERD, colitis and neck pain are severe impairments). Further, the ALJ must account for how the cumulative effect of Plaintiff's physical *and* mental impairments affect her ability to perform work. *See* 20 C.F.R. § 404.1529(b) ("Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or *psychological* abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.") (emphasis added). In any event, even if Plaintiff's symptoms are "mainly functional," they still may be debilitating. "As countless cases explain, the etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to determine what is causing her pain that she is faking it." *Parker*, 597 F.3d at 922; *Johnson*, 449 F.3d at 806 ("Pain can be severe to the point of being

---

[10] "A common trend is to see functional symptoms and syndromes such as fibromyalgia, irritable bowel syndrome and functional neurological symptoms such as functional weakness as symptoms in which both biological and psychological factors are relevant, without one necessarily being dominant." http://en.wikipedia.org/wiki/Functional_symptom

disabling even though it has no diagnosable cause thus is entirely in the patient's mind.").

The ALJ discounted Plaintiff's claims of pain in her feet because a consultative examination indicated that she was able to "move about without any significant impairment throughout the exam room." (R. at 18; *see id.* at 441.) The ALJ, however, fails to note the myriad references in the medical record to Plaintiff's foot pain and neuromas. (*See, e.g., id.* at 265–68, 270, 273–76, 279–83, 354, 356, 358, 382–83, 385, 590–91). "An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence." *Myles*, 582 F.3d at 678 (citations omitted); *see Murphy*, 496 F.3d at 634 ("An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion.").[11]

Finally, the ALJ failed to discuss the SSR 96-7p factors. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, at *3. While the ALJ briefly mentioned Plaintiff's daily activities (R. at 17), the ALJ did not provided any

---

[11] Defendant suggests that a psychological consultant noted behavior at odds with Plaintiff's allegations of disability. (Def.'s Mot. 10.) The consultant observed that Plaintiff appeared "very dramatic in her presentation and overly talkative." (R. at 561.) The ALJ, however, did not explain how this statement is "at odds" with Plaintiff's claims or undermines her credibility. (R. at 18–19); *see also Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ. That is why the ALJ (not the Commissioner's lawyers) must build an accurate and logical bridge from the evidence to her conclusion.") (citations omitted).

reasoning as to whether these daily activities support or undermine Plaintiff's credibility, *see Steele*, 290 F.3d at 941–42 ("According to Social Security Ruling 96-7p, . . . the evaluation must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.' Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed."). The ALJ's failure to analyze these factors warrants reversal. *See Villano*, 556 F.3d at 562 (because "the ALJ did not analyze the factors required under SSR 96-7p," "the ALJ failed to build a logical bridge between the evidence and his conclusion that [claimant's] testimony was not credible").

On remand, the ALJ must conduct a reevaluation of Plaintiff's complaints of pain with due regard for the full range of medical evidence. *See Zurawski*, 245 F.3d at 888.

## C. The ALJ's Determination of Plaintiff's RFC

The ALJ found that Plaintiff has adjustment reaction disorder, anxiety disorder, IBS, foot neuroma, GERD, colitis and neck pain, which cumulatively result in functional limitations. (R. at 19.) "Based upon both the objective findings and giving partial credibility to some of [Plaintiff's] subjective complaints," the ALJ found that Plaintiff "remains able to perform a limited range of sedentary work." (*Id.*) Specifically, "because of [Plaintiff's] history of IBS and colitis she must have access to the bathroom." (*Id.*) Further, "from a mental health perspective and due to her IBS, she is limited to unskilled, simple, routine and repetitive tasks." (*Id.*)

Plaintiff contends that the ALJ's RFC assessment did not sufficiently account for all of her physical and mental limitations. (Pl.'s Mot. 5–9.) With regard to her IBS, Plaintiff asserts that "the ALJ did not make any findings regarding the frequency or length of time Plaintiff would have to spend away from her work as a result of this impairment." (*Id.* 6.) With regard to her mental impairments, Plaintiff argues that limiting Plaintiff to performing unskilled, simple, routine and repetitive tasks "does not sufficiently account for limitations in persistence or pace." (*Id.* 8.)

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported

symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Here, the ALJ failed to construct a logical bridge between the evidence and the RFC. With regard to Plaintiff's IBS and colitis, the ALJ concluded that these impairments require her to "have access to a bathroom." (R. at 17, 19.) Beyond this general statement, however, the ALJ did not determine the frequency or length of time Plaintiff would have to spend in the bathroom as a result of these impairments. As a result, the ALJ failed to develop an RFC that is "expressed in terms of work-related functions" and which includes "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *6, *7.

Defendant argues that Plaintiff can address her incontinence by following the ME's advice to wear adult undergarments. (Def.'s Mot. 7–8; *see* R. at 49–50.) The ALJ, however, did not cite the ME's testimony in limiting Plaintiff to work where she would have access to a bathroom. Thus, Defendant "violated the *Chenery* doctrine (*see SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)), which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." *Parker*, 597 F.3d at 922. In any event, regardless of how severe Plaintiff's IBS limitations are, the ALJ must nonetheless express Plaintiff's limitations in work-related terms. *See* SSR 96-8p.

With regard to Plaintiff's adjustment reaction disorder and anxiety disorder, the ALJ determined that she is moderately limited in her ability to maintain concentration, persistence, or pace, and mildly limited in her ability to perform activities of daily living and maintaining social functioning. (R. at 15–16.) The ALJ concluded that these impairments, along with Plaintiff's IBS, limit her to "unskilled, simple, routine and repetitive tasks." (R. at 17, 19.) An ALJ, however, cannot account for moderate limitations in concentration, persistence, or pace by merely restricting a claimant to simple, routine tasks. *See Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009) (ruling that ALJ cannot account for "limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft*, 539 F.3d at 677–78 (limiting hypothetical to simple, unskilled work does not account for claimant's difficulty with memory, concentration, or mood swings).

Defendant argues that any error in Plaintiff's mental RFC determination is harmless because the objective evidence does not support a finding of significant limitations in concentration, persistence or pace. (Def.'s Mot. 8–9.) The Court, however, must limit its review to the rationale offered by the ALJ. *See Chenery*, 318 U.S. at 90–93; *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("the government's brief and oral argument . . . seem determined to dissolve the *Chenery* doctrine in an acid of harmless error"). And here, the ALJ provided no reasoning for her determination that moderate limitations in concentration, persistence, or pace restricted Plaintiff to simple, routine tasks.

On remand, the ALJ shall reassess Plaintiff's RFC by "evaluating all limitations that arise from medically determinable impairments, even those that are not severe." *Villano*, 556 F.3d at 563. The RFC shall be "expressed in terms of work-related functions" and include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p.

## D. Summary

In sum, the ALJ has failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (citation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not legally sufficient or supported by substantial evidence. On remand, the ALJ shall reevaluate Plaintiff's mental and physical impairments and RFC, considering all of the evidence of record, including the reports of Dr. Horowitz, and shall explain the basis of her findings in accordance with applicable regulations and rulings. The ALJ shall also consider the aggregate effects of Plaintiff's impairments, discussing the manner in which her mental limitations impacts her other diagnoses.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED**, and Defendant's Motion for Summary Judgment [Doc. 17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is re-

versed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: May 6, 2011

_____
NAN R. NOLAN
United States Magistrate Judge